IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DELIA BERGLUND and DARLENE VASQUEZ, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | NO. CIV-06-672-D |
| THE TOWN OF ASHER, OKLAHOMA, a Municipal Corporation; THE BOARD OF COUNTY COMMISSIONERS OF POTTAWATOMIE COUNTY; KURT SHIREY, Sheriff of Pottawatomie County, Oklahoma; JAMES BRAND; DEPUTY SWEARINGEN; and DEPUTY RODRIGUEZ, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

ORDER

In this action, Plaintiffs Delia Berglund ("Berglund") and her daughter, Darlene Vasquez

("Vasquez"), assert federal and state claims based on events related to their October 13, 2004 arrest

in Asher, Oklahoma. Originally filed in the District Court of Pottawatomie County, the action was

removed to this Court because a federal question is presented. Pursuant to 42 U.S.C. § 1983,

Plaintiffs allege that their Fourth and Fourteenth Amendment rights were violated as a result of an

allegedly unlawful search, seizure and arrest of Plaintiffs which also allegedly involved the use of

excessive force. Plaintiffs' § 1983 claims are asserted against Pottawatomie County Deputy

Sheriffs Keith Swearingen ("Swearingen") and Anthony Rodriguez ("Rodriguez") and against

Asher, Oklahoma Police Chief James Brand ("Brand"); Plaintiffs also seek to hold the City of Asher

("Asher") liable on their § 1983 claims to the extent that the same are based on Brand's conduct. Plaintiffs further assert tort claims against all Defendants, alleging that each is liable under various theories of recovery.

Plaintiffs plead four causes of action[1]:  1) an Oklahoma Governmental Tort Claims Act ("GTCA") claim against Pottawatomie County Sheriff Kurt Shirey ("Sheriff Shirey"), the Board of County Commissioners of Pottawatomie County ("Board"), and the Town of Asher ("Asher"), alleging that those defendants are liable for certain torts[2] committed by Swearingen, Rodriguez and Brand in the scope of their employment; 2) a claim that, under state law, Sheriff Shirey is liable for the conduct of his deputies; 3) the § 1983 claims against Swearingen, Rodriguez , Brand, and Asher, asserting violations of the Fourth and Fourteenth Amendments; and 4) tort claims against Brand, Swearingen and Rodriguez, seeking to hold them individually liable for their tortious conduct if the Court determines that they acted outside the scope of their employment.

Now before the Court are three Motions for Summary Judgment filed, respectively, by the Board [Doc. No. 36], Swearingen and Rodriguez [Doc. No. 37], and Sheriff Shirey [Doc. No. 38]. The movants argue that, pursuant to Fed. R. Civ. P. 56 (c), the undisputed material facts entitle them

---

[1]*It is difficult to determine from the Petition the precise claim(s) asserted against a specific defendant.  In fact, the Court's initial ruling on the summary judgment motion of Swearingen and Rodriguez included the conclusion that the § 1983 claims were asserted only against them.  That conclusion was based on the parties' Joint Status Report, which stated that the §1983 claims were directed at Swearingen and Rodriguez. Because the Court interpreted the federal claims as directed only at those defendants, it concluded that the remaining claims should be remanded after it granted the summary judgment motion of Swearingen and Rodriguez.  However, the parties subsequently asked the Court to reconsider its ruling on that point, advising that the parties agree the federal claims are also asserted against Brand and Asher.  Because Brand and Asher did not seek summary judgment, the order granting judgment in favor of Swearingen and Rodriguez did not dispose of all federal claims. As a result, the Court withdrew its Order and advised that a new Order, addressing all summary judgment claims on federal and state law, would be filed.*

[2]*Plaintiffs allege that the torts include assault and battery, trespass and unlawful entry, and unlawful or false arrest.*

to judgment as a matter of law on the claims asserted against them.   Plaintiffs have timely responded to the Motions, and the movants have filed reply briefs.   The parties have also submitted evidentiary materials applicable to all  three Motions.

The parties' briefs reflect that certain facts are not disputed.   In addition, the record submitted by the parties contains sworn testimony and other evidence establishing additional undisputed facts.

 It is not disputed that, at the time relevant to their claims, Plaintiffs resided at  308 West Main in Asher.  Berglund's husband,  David Berglund, also resided in the home, and he witnessed the events on which Plaintiffs' claims are based[3].   According to Brand's trial testimony[4], which is not disputed, he went to Plaintiffs' residence on the evening of October 13, 2004 to locate Vasquez; he did so because Asher resident Michelle Gomez had complained that Vasquez  vandalized Gomez's truck by throwing a tree limb through a window.  *See* Asher Trial transcript("Trial Tr."), Board Ex. 2, p.8; Gomez's  written complaint, Board Ex. 4.

     The parties agree that  Berglund was outside the residence when Brand arrived and that he asked her about Vasquez's whereabouts.  According to Brand, Berglund reacted angrily, poking him in the arm  and loudly  cursing at him.  Asher Trial Tr., Board Ex. 2,  p. 9, lines 5-25.   He told her to calm down or  he would place her under arrest; when she continued shouting and cursing, he attempted to restrain and handcuff her.  *Id.*; p. 10, lines 1-4.  She resisted, and Brand was unable to

---

[3]*Berglund's brother and Vasquez's four sons also resided at the home; however, the record does not contain deposition testimony or statements from those  individuals.*

[4]*On December 1, 2004,  the Municipal Court of Asher, Oklahoma conducted a trial ("Asher Trial") on misdemeanor charges of disorderly conduct against both Plaintiffs and a charge of public intoxication against Plaintiff Vasquez.  Those charges resulted from  the same  incidents underlying  Plaintiffs' claims in this action. Portions of the Asher Trial transcript, which include the testimony of Plaintiffs as well as that of  David Berglund and Brand,  are submitted as Plaintiffs' Exhibit 1 and as Board Exhibit 2.*

restrain her; Berglund then quickly walked to her house. *Id.*   She does not deny that she reacted angrily when Brand approached her; construing the record in her favor, she apparently believed that he was retaliating against her daughter because of prior incidents which are not at issue in this case[5]. Berglund contends that Brand injured her neck during their struggle.  Berglund dep., Board Ex. 1, p. 87, lines 3-15.

It is not disputed that Berglund's husband was outside  the residence when Brand arrived, that he witnessed these occurrences, and that he remained outside after Berglund entered the residence.  The parties also  agree that, after Berglund went inside the residence,  Brand called Sheriff Shirey's office to request backup assistance; they further agree that  Berglund also telephoned 911 from her residence to request that the Sheriff assist her and to request medical attention.

About fifteen  minutes after Berglund and Brand separately called the Sheriff's office, deputies Swearingen and Rodriguez arrived.  It is not disputed that, upon their arrival,  Swearingen and Rodriguez talked to Brand.  Plaintiffs and David Berglund observed this conversation but did not hear what was said.    It is undisputed that, after talking to Brand, Swearingen and Rodriguez walked to the residence, stood outside in the yard adjacent to the porch, and asked Berglund to come outside.  According to Berglund, she refused and told them to come inside if they wanted to talk to her[6].  Berglund testimony, Asher Trial Tr., Board Ex. 2, p. 66, lines 22-25.   David Berglund heard

---

[5]*Berglund testified that Brand had previously made sexual comments to Berglund and  Vasquez, and had made improper sexual advances to Vasquez, who refused those advances. Such allegations are not asserted in this case.  However, Berglund's deposition testimony, liberally construed in her favor,  indicates  that her angry reaction to Brand was based in part on her prior contact with him.  See Berglund dep., Board Ex. 1, p. 66, lines 6-25.*

[6] *Berglund first testified in her deposition that she did not recall whether she asked the deputies to enter her residence; however, when reminded of her Asher Trial testimony, she agreed that her memory at the time of the trial would have been clearer; she acknowledged that she testified at trial that she told  them to enter the residence.*

the deputies' request and Berglund's response; when Berglund refused to come outside, he opened the door for the two deputies and accompanied them as they entered the living room of the residence. David Berglund testimony, Asher Trial Tr., Board Ex. 2, p. 97; p. 98, lines 1-12.

Vasquez testified that she was inside the residence during these occurrences. She saw Swearingen and Rodriguez arrive, talk to Brand, and then walk toward the house; she heard them ask Berglund to come outside. Vasquez testimony, Asher Trial Tr., Board Ex. 2, p. 49, lines 9-16. She also saw David Berglund open the door for the deputies. *Id.,* p. 50, lines 20-25; Vasquez dep., Board Ex. 7, p. 76, lines 1-6. The parties agree that Brand remained outside near his car and that he did not enter the residence.

According to the undisputed facts, Swearingen, Rodriguez and Brand did not have a search or arrest warrant. It is also undisputed that, after entering the residence, Swearingen took Berglund's arm, placed it behind her back, and took her to Brand's car. Swearingen and Rodriguez did not handcuff Berglund. Berglund dep., Board Ex. 1, p. 195, lines 13-15. Berglund testified that Rodriguez never touched her at any time, but that Swearingen grabbed her right arm and twisted it behind her back, causing her pain. *Id.,* p. 193, lines 14-19; p. 195, lines 6-7. Swearingen and Rodriguez did not threaten Berglund or curse at her; they did not display their handguns at any time, and did not pull out any batons or handcuffs. Berglund dep., Board Ex. 1, p. 204, lines 22-25; p. 205, 1-4; lines 8-14. Berglund testified that she was "a little bit" afraid of them because she did not know what Brand had told them; however, she also testified that they "seemed very nice to me." *Id.*, p. 205, lines 5-7; lines 15-16. They escorted her to Brand's patrol car, and Brand walked

---

*Berglund dep., Board Ex. 1, p. 103, lines 8-15;p. 194, lines 6-17; p. 187, lines 19-25; p. 189-190; p. 191, lines 1-7.*

5

toward the residence; Berglund stood beside the car, and she was not handcuffed or otherwise restrained at the time.  Berglund dep., Board Ex. 1, p. 111, lines 8-20.  The evidence establishes that Swearingen and Rodriguez did not approach the residence again, but remained outside near Brand's car.

According to Vasquez, she was upset when she saw the deputies take Berglund to Brand's car; she opened the front door, stood in the open doorway, and called out to the deputies that they should take Vasquez instead of Berglund.  Vasquez testimony, Asher Trial Tr., p. 84, lines 23-25; p. 85, lines 1-14.  Brand, who had walked to the front porch of the residence, then grabbed Vasquez's wrist, and took her to his car.  *Id.* at p. 85.  Berglund and David Berglund saw Vasquez standing in the open doorway; they also saw Brand grab her wrist, and escort her to his patrol car. Berglund dep., Board Ex. 1, p. 112, lines 2-22; David Berglund testimony, Asher Trial Tr., p. 98, lines 17-25.  Vasquez does not allege that she was injured by Brand.  She also does not contend that either Swearingen or Rodriguez threatened her or harmed her.  They did not handcuff her; in fact, she testified that she did not recall if either of them touched her, as it was Brand who took her from the doorway of the residence.  Vasquez dep., Board Ex. 7, p. 80, lines 16-22; p. 81, lines 1-23.

When Brand and Vasquez reached his patrol car, Brand opened the door, put Vasquez in the car and handcuffed her; they did not struggle.  Berglund dep., Board Ex. 1, p.114, lines 2-19.  Brand then handcuffed Berglund and placed her in the car.  *Id.* at lines 20-25.  Berglund does not contend that there was anything improper about the manner in which she was handcuffed.  Berglund dep., Board Ex. 1, p. 115, lines 23-25; p. 116, line 1.

After arresting Plaintiffs, Brand drove them to the Asher police department, where both were charged with disorderly conduct; Vasquez was also charged with public intoxication.

Documents reflecting the criminal charges are submitted as Board Exhibits 8 and 9. Because Asher does not have a jail, Brand then drove Plaintiffs to the Konawa, Oklahoma jail.  Swearingen and Rodriguez did not accompany Brand to Asher or the Konawa jail.   In fact, the evidence establishes that, after taking Berglund to Brand's patrol car, Swearingen and Rodriguez had no further contact with Plaintiffs.

Because Berglund complained that she was in pain, Brand took her to Valley View Hospital in Ada; they were accompanied by a female city clerk, Ms. Bowles, who remained with Berglund while she was at the hospital.   Berglund dep., Board Ex. 1, p. 161. Berglund was treated in the emergency room, where her blood pressure was determined to be extremely high; she remained at the hospital for several hours until her blood pressure stabilized. According to Berglund, the emergency room examination revealed contusions on her neck and wrist.  *Id.*   However, the record before the Court contains no medical evidence reflecting any injury to Berglund or Vasquez. There is also no evidence that Vasquez has complained at any time that she was injured by Swearingen,  Rodriguez or Brand.

Plaintiffs were prosecuted by the Town of Asher and found guilty of disorderly conduct; at the close of the trial, the public intoxication charge against Vasquez was dismissed for lack of evidence.  *See* Asher Trial Tr., Board Ex. 2, p. 127, lines 10-18.  On appeal to the District Court of Pottawatomie County, Plaintiffs' disorderly conduct convictions were reversed.

Plaintiffs contend that the foregoing events support their federal claims against Swearingen, Rodriguez, Brand, and Asher.  They also argue that  their state law claims against all defendants are supported by these occurrences.

Plaintiffs' federal claims against Swearingen and Rodriguez[7]:

To prevail on a § 1983 claim, a plaintiff must prove: "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of [law]." *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir.2002), *citing Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  To impose § 1983 liability on a state actor, a plaintiff must show that such actor personally participated in the alleged violation of federal rights.  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).

Plaintiffs' § 1983 claims in this case are limited to their allegation that, while acting under color of law,  Swearingen and Rodriguez violated the Plaintiffs' Fourth Amendment rights[8]. Swearingen and Rodriguez do not dispute that,  as deputy sheriffs, they acted  under color of law during the events at Plaintiffs' residence; thus, the third and fourth elements of the § 1983 claims are satisfied.  However, Swearingen and Rodriguez argue that they are entitled to judgment as a matter of law  under the doctrine of qualified immunity, which "provides that government officials 'generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

[7]*Although the federal claims are also asserted against Brand and Asher, those defendants did not file summary judgment motions; therefore, the discussion herein is limited to the allegations directed at Swearingen and Rodriguez.*

[8] *Although Plaintiffs allege a violation of the Fourth and Fourteenth Amendments, they assert no argument supporting a Fourteenth Amendment claim that they were subjected to unequal treatment. Instead, their only reference to the Fourteenth Amendment is in connection with their specific allegations based on the Fourth Amendment, and they argue only that their rights to be free from unlawful search, seizure, arrest and excessive force were violated.  In such cases, the Court's analysis is limited to the Fourth Amendment claim. "The more general due process considerations of the Fourteenth Amendment are not a fallback to protect interests more specifically addressed by the Fourth Amendment." Becker v. Kroll  494 F.3d 904, 919 (10th Cir. 2007), citing Albright v. Oliver, 510 U.S. 266, 273 (1994).  Such claims are properly considered under the Fourth Amendment rather than the more general substantive due process analysis under the Fourteenth Amendment.  Id.*

known.' "*Dixon v. Richer*, 922 F.2d 1456, 1459 -1460 (10th Cir. 1991), *quoting   Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Conceding that the Fourth Amendment right to be free from unlawful searches or seizures was clearly established at the time of these events, Swearingen and Rodriguez argue that the undisputed material facts establish that their conduct did not violate Plaintiffs' Fourth Amendment rights.

Standard of Review:

Summary judgment may be granted where the undisputed material facts establish that one party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56 (c ); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A material fact is one which may affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).   To establish  a material fact dispute sufficient to avoid summary judgment, a plaintiff  must present more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict for the non-moving party" on that claim. *Id.*   When considering a summary judgment Motion, a court must view the facts in the record and the reasonable inferences therefrom in the light most favorable to the nonmoving party. *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).  Where the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action.  *Celotex*, 477 U.S. at 322.

Where, as here,  a claim of qualified immunity is asserted in a summary judgment motion,  the "burden shifts to the plaintiff," who must establish that the defendants' "actions violated a constitutional or statutory right" and that the right allegedly violated was "clearly established when

the alleged violation occurred." *Dixon*, 922 F.2d at 1459-60; *see also Callahan v. Millard County*, 494 F.3d 891, 894-95 (10th Cir. 2007).   If a plaintiff fails to carry either part of this two-part burden, the defendant is entitled to qualified immunity. *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995), *citing Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988); *see also Romero v. Fay*, 45 F.3d 1472, 1477 (10th Cir. 1995).

Plaintiffs contend that their Fourth Amendment rights were violated when, lacking a warrant, Swearingen and Rodriguez: 1) entered Plaintiffs' residence, 2) searched the residence, and 3) arrested or seized Berglund and/or Vasquez. They also argue that the deputies utilized excessive force in removing Berglund from the residence[9].   To determine whether Swearingen and Rodriguez are entitled to qualified immunity, the Court will analyze each of these contentions in light of the material facts and the governing law.

Unlawful entry:

It is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004). "Nevertheless, because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006), *quoting Flippo v. West Virginia*, 528 U.S. 11, 13 (1999) (*per curiam*) and *Katz v. United States,* 389 U.S. 347, 357 (1967).

Swearingen and Rodriguez contend that a warrant was not required prior to their entry into

---

[9]As noted above, Berglund's own testimony establishes that her excessive force claim is asserted only against Swearingen.  Furthermore, the record, construed most liberally for Plaintiffs,  contains no evidence to support a claim by Vasquez that the deputies employed any force against her.  Thus, the only excessive force claim to be considered is that alleged by Berglund against Swearingen.

the residence  because the undisputed  facts show that they had consent to enter.   Consent is  "one of the specifically established exceptions to the requirements of both a warrant and probable cause." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). In the context of the Fourth Amendment, a valid consent must be "freely and voluntarily given."  *United States v. Sandoval*, 29 F.3d 537, 539 (10th Cir. 1994).   The Court must examine the totality of the circumstances to determine whether consent is voluntary or the "product of duress or coercion, express or implied."  *Schneckloth*, 412 U.S. at 225.   In making that determination, a court should consider whether the circumstances included the following:

> the threatening presence of several police officers; the brandishing of a weapon by an officer; some physical touching by an officer; the use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory...interaction in a nonpublic place or small enclosed space; and absence of other members of the public.

*United States v. Abdenbi*, 361 F.3d 1282, 1291 (10th Cir. 2004), *quoting United States v. Sanchez*, 89 F.3d 715, 718 (10th Cir. 1996).

The record before the Court establishes that these factors are not present in the instant case. As discussed above, when Swearingen and Rodriguez asked Berglund to come outside the residence, she refused and told them to come inside to talk to her.  It is not disputed that the deputies did not brandish weapons, shout at Berglund, or use threatening or aggressive language.  They were outside the residence, in a public place, and Berglund's husband was present.  Her husband, who heard both the deputies' request that she come outside  and her response, opened the door for the deputies and accompanied them as they entered the residence.  Plaintiffs offer no evidence to support a contention that the deputies coerced Berglund or her husband into allowing them to enter the residence.

Plaintiffs argue,  however,  that Berglund's suggestion that the deputies enter the residence

was limited only to an invitation to talk to her.  Plaintiffs' Response at p. 5.   Whether a law enforcement officer reasonably believed consent was voluntarily given is not, however, determined by the subjective motivation of the person from whom consent was obtained.    "The particular personal traits or subjective state of mind of the defendant are irrelevant to the objective 'reasonable person' test...other than to the extent that they may have been known to the officer and influenced his conduct."  *United States v. Hill*, 199 F. 3d 1143, 1149 (10th Cir. 1999) (*citations omitted).* Instead, the conduct of Swearingen and Rodriguez must be viewed objectively; the question is whether reasonable law enforcement officials, in the circumstances faced by Swearingen and Rodriguez, would have believed they had consent to enter the residence.  *Brigham City*, 547 U.S. at 404 ( "An action is 'reasonable' under the Fourth Amendment... as long as the circumstances, viewed objectively, justify the action.").

There is nothing in the record to suggest that Swearingen and Rodriguez could reasonably have known Berglund's unexpressed motivation when she told them to come inside her home; in fact, there is no evidence that they knew her or had previous contact  with her.  Even if they reasonably should have  believed that Berglund's suggestion that they enter the residence was limited in some fashion, however, they also had the consent of her husband, who opened the door and accompanied them in to the home.  Even in the context of a warrantless search, the consent of a common owner is sufficient, as "[t]he Fourth Amendment prohibition against a warrantless search and seizure does not apply when voluntary consent is obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the property." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *United States v. Matlock*, 415 U.S. 164, 170 (1974); *United States v. Falcon*, 766 F.2d 1469, 1474 (10th Cir.1985).

There  is no evidence  that Swearingen and Rodriguez  sought to enter the residence to conduct a search.  Even if that were the case,  they were faced with a situation in which Berglund told them to come inside the residence and, thereafter, her husband opened the door and entered with them.   Given  the totality  of  the circumstances  faced  by  Swearingen  and  Rodriguez,  the  Court concludes that  reasonable law enforcement officials in their  position would have believed they had valid consent to enter the residence.

Notwithstanding  the  evidence,  Plaintiffs  contend   that  summary  judgment  cannot  be granted on the issue of consent because consideration of the totality of the circumstances  presents a fact question for the jury.   Plaintiffs' argument  overlooks the fact that, to overcome summary judgment, they must submit evidence showing the existence of a material fact dispute, and such evidence must be sufficient to allow a reasonable jury to find in their favor. *See Anderson*, 477 U.S. at  247-48.  In this case, Plaintiffs have not presented sufficient evidence from which a jury could conclude that reasonable law enforcement officers, in the circumstances faced by Swearingen and Rodriguez,  would  have  believed  they  lacked  consent  to  enter  the  residence.    Accordingly, the undisputed material facts establish that Swearingen and Rodriguez did not violate Plaintiffs' rights by entering the  residence  without  a warrant,  and they are entitled  to judgment  on this aspect of Plaintiffs' Fourth Amendment claim.

Unlawful  search:

Although Plaintiffs also allege that Swearingen and Rodriguez conducted a warrantless search of the residence, that contention  is negated by Plaintiffs' own testimony.  Berglund testified that the deputies did not search the residence.  Berglund dep., Board Ex. 1, p. 197, lines 13-15. Vasquez, who was inside the residence and observed the deputies' conduct in the living room,  was

13

asked in her deposition if the deputies went into any other part of the residence, and she testified that they did not.   Vasquez dep., Board Ex. 7,  p. 80, lines23-25; p. 81, line 1.   Plaintiffs offer no evidence to support their claim that the deputies conducted any search of the premises.   There is no contention that they searched the person of either Berglund or Vasquez.   As a matter of law, Swearingen and Rodriguez are entitled to judgment on the claim of an unlawful, warrantless search in violation of the Fourth Amendment.

Unlawful seizure or arrest:

Plaintiffs next contend that Swearingen and Rodriguez unlawfully  arrested them without a warrant.   Conceding that they had no warrant, Swearingen and Rodriguez first argue that they cannot be liable on this claim because it is undisputed that they did not arrest Plaintiffs; instead, the record establishes that Brand placed them under arrest.   Even if the conduct constitutes an arrest, however, Swearingen and Rodriguez argue that no Fourth Amendment violation occurred because they had probable cause to support a warrantless arrest.

Fourth Amendment protection is not limited to formal arrests, as an unlawful "seizure"  may be based on less intrusive encounters, including  investigative detentions. *Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007).   An investigative detention is  a "seizure within the meaning of the Fourth Amendment;" however, "unlike an arrest, it need not be supported by probable cause." *Id.* at 1115.  Instead, it requires "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Cortez*, 478 F.3d at 1115.   To validate a warrantless arrest, however, the officer must have probable cause to believe the individual has committed a crime, or that a crime is being committed.  *Id., citing Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).   Whether a seizure constitutes an arrest is determined by the totality of the circumstances; an arrest is

14

"distinguished by the involuntary, 'highly intrusive' nature of the encounter." *Cortez*, 478 F.3d 1115, *quoting Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir.2000). Typically, an arrest involves the "use of firearms, handcuffs, and other forceful techniques" *Cortez*, 478 F.3d at 1115-16; *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir.1994).

In the instant case, the absence of weapons and handcuffs indicates that the encounter involving the deputies and Berglund was not an arrest but a detention or seizure which ultimately led to Berglund's arrest by Brand.   Even if their encounter constitutes an arrest of Berglund, however, the deputies argue that they had probable cause to believe she had committed a crime based on the information provided to them by Brand.

Probable cause for a warrantless arrest does not require that an officer actually witness criminal activity; it also exists "where facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense has been or is being committed." *Marshall v. Columbia Lea Regional Hospital*, 345 F.3d 1157, 1166 (10th Cir. 2003), *citing Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985).  In making these determinations, police officers may " rely on determinations made by other officers regarding the constitutional legitimacy of police procedures." *Marshall*, 345 F.3d at 1180, *citing Whiteley v. Warden*, 401 U.S. 560, 568 (1971) and *Baptiste v. J. C. Penney Co.*, 147 F.3d 1252, 1260 (10th Cir. 1998).  An officer must have "reasonably trustworthy information" sufficient to "warrant a prudent man in believing that an offense has been or is being committed." *Karr*, 774 F.2d at 1031.  Although Plaintiffs contend that such information must be  provided by a "superior officer" to be sufficiently trustworthy, that contention is not supported by the governing law.   In fact, the required "reasonably trustworthy information" is not limited to that which is obtained from

15

another law enforcement officer, as it may include information obtained from a victim. *Karr*, 744 F.2d at 1032.

Plaintiffs also argue that the Court cannot conclude that Swearingen and Rodriguez reasonably relied on information provided by Brand because the record does not establish exactly what Brand told them.   However, the record establishes that Brand  requested  backup assistance from the Sheriff  after Berglund  resisted Brand's efforts to restrain and handcuff her. Brand testimony, Asher Trial Tr., Board Ex. 2, p. 9, lines 22-25; p. 10, lines 1-23.  According to Brand, instead of pursuing her, he decided to seek assistance.  *Id.*  Plaintiffs offer no evidence to dispute his testimony.  Nor do Plaintiffs deny that, immediately upon their arrival at the scene,  Swearingen and Rodriguez spoke to Brand before taking any action.  According  to the Plaintiffs' own testimony, it was only after talking to Brand that the deputies approached the residence and asked Berglund to come outside.

Where an officer claims that he effectuated a warrantless arrest only after first obtaining reliable  information from another officer, a party may create a factual dispute by offering  evidence to show that the arresting officer acted before obtaining such information.  *See, e.g., Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1313 (10th Cir. 2002) (finding a factual dispute where the arresting officer claimed he talked with a security guard before arresting the plaintiff, but the plaintiff testified that he was arrested and handcuffed prior to that conversation).    In this case, however, Plaintiffs offer no  evidence to contradict the deputies' argument, and Plaintiffs' own testimony supports that argument.

Liberally construing their argument, Plaintiffs imply that Brand provided false information to Swearingen and Rodriguez.  Even if it is ultimately determined that the information provided  was

untrue, however, that does not compel a conclusion that Swearingen and Rodriguez were unreasonable in relying on that information at the time it was conveyed to them.  "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity" where  the subject of the arrest seeks to hold the officials liable under § 1983. *Romero*, 45 F.3d at 1476, *quoting Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  *See also Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("[L]aw enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present...in such cases those officials...should not be held personally liable.")

Construing the evidence in the record most liberally in Plaintiffs' favor, the Court concludes that Swearingen and Rodriguez reasonably relied on the information provided by Brand  prior to seizing or arresting Berglund.   Plaintiffs offer no evidence to suggest that the deputies had reason to doubt Brand.    Thus, even if the conduct of Swearingen and Rodriguez is construed as a warrantless arrest of Berglund  which required probable cause, the evidence establishes that probable cause existed.

With respect to Vasquez, the record establishes that neither Swearingen nor Rodriguez seized, detained or arrested her.  Thus, the record does not support their personal participation in her arrest, an essential element of § 1983 liability. *See Mitchell*,80 F.3d at 1441.  However, construing her testimony liberally in her favor, Vasquez believes they participated in her seizure and arrest. According to her testimony, she thinks the deputies' conduct toward Berglund  was intended to persuade Vasquez to leave the residence so that Brand could arrest her.   She testified that "the only thing they did was try to get my attention so that, I guess, James [Brand] can get me and handcuff me and take me to jail."  Vasquez dep., Board Ex. 7, p. 81, lines 10-16.   To the extent that the

deputies' conduct can be construed as assisting Brand in making an arrest, however,  the record reflects that the deputies relied on Brand's information regarding Vasquez, and Plaintiffs offer  no evidence to suggest that their reliance was unreasonable.   Accordingly, for the same reasons applicable  to their conduct toward Berglund, the Court concludes that the limited participation of Swearingen and Rodriguez in Vasquez's arrest did not violate her Fourth Amendment rights.

Excessive Force claim:

Plaintiffs' final Fourth Amendment claim is based on Berglund's assertion that Swearingen used  excessive force when he twisted her arm behind her back.      The use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.  *Saucier v. Katz*, 553 U.S.194, 201 (2001);  *Graham v. Conner*, 490 U.S. 386, 395 (1989).  A law enforcement officer is entitled to use "some degree of physical coercion or threat thereof" when carrying out his duties.  *Graham*, 490 U.S. at 396.  Whether the force utilized was excessive must be evaluated from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396-97.  The officers' conduct must be viewed objectively, without regard to their underlying intent or motivation.  *Id.*  The appropriate degree of force is that which a reasonable police officer would have found necessary under the circumstances; law enforcement officers are not required to use alternative, less intrusive means if their conduct is objectively reasonable. *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) *citing Medina v. Cram,* 252 F.3d 1124, 1133 (10th Cir.2001).  *See also Illinois v. Lafayette*, 462 U.S. 640, 647-48 (1983).

Berglund's  claim of excessive force is based only on the undisputed fact that  Swearingen grasped her right arm and twisted it behind her back while walking with her to Brand's patrol car. Whether doing so constitutes excessive force  must be evaluated according to the circumstances he

faced at the time.

It is undisputed that, prior to the deputies' arrival, Brand had attempted to handcuff Berglund and was unable to do so when she resisted.   It is also undisputed that he called the Sheriff's office for backup assistance and that, when they arrived, the deputies talked to Brand before approaching the residence.   Thus, Swearingen and Rodriguez were faced with circumstances in which another law enforcement officer told them that Berglund had physically resisted Brand when he attempted to arrest her.

Given these circumstances, the Court concludes that a reasonable officer in the position of Swearingen would have believed that some degree of force  would be required to restrain Berglund. However, it is undisputed that Swearingen and Rodriguez did not display their weapons, and they did not shout at or threaten Berglund.    Berglund testified that they were very nice to her.

The Court concludes that Swearingen's conduct in twisting Berglund's arm behind her back was not an objectively unreasonable degree of force under the circumstances.   Although it is possible that merely taking her by the arm and leading her to Brand's patrol car would have been sufficient, Swearingen was not required to choose the least intrusive means of restraint.  *See Jiron*, 392 F.3d at 414.

Having fully examined the record and construing the same in Plaintiffs' favor, the Court concludes that, according to the law governing excessive force claims, Swearingen did not violate Berglund's Fourth Amendment rights.   Accordingly, the Court concludes that the undisputed material facts establish that Swearingen and Rodriguez are entitled to judgment as a matter of law on the claim of excessive force in violation of the Fourth Amendment.

Having fully considered the record and having construed the evidence in Plaintiffs' favor,

the Court concludes that the undisputed material facts establish that Plaintiffs cannot prove their claim that Swearingen and Rodriguez violated the Fourth Amendment on any of the bases argued. Because Plaintiffs have failed to present sufficient facts to create a material factual dispute, Swearingen and Rodriguez are entitled to qualified immunity on Plaintiffs' federal claims arising under § 1983.  Accordingly, their Motion for Summary Judgment [Doc. No. 37] on those claims is GRANTED.  Plaintiffs' federal claims will thus be limited to their allegations against Brand and Asher, and the case will proceed on those claims.

State law claims against Swearingen and Rodriguez:

Swearingen and Rodriguez also seek judgment on Plaintiffs' state law tort claims asserted against them.  Plaintiffs contend Swearingen and Rodriguez committed state common law torts of trespass and unlawful entry, assault and battery, and unlawful or false arrest.  Although Plaintiffs seek to hold the Board and Shirey liable under the GTCA for the deputies' alleged torts committed in the scope of their employment, Plaintiffs also assert an alternative claim directly against the deputies, seeking to hold Swearingen and Rodriguez[10] individually liable "for torts committed outside their scope of employment." Petition ¶ 27.  Thus, if the Court determines that their conduct was tortious but that it occurred outside the scope of their employment and thus is not covered by the GTCA, Plaintiffs contend that these defendants are individually liable.  Plaintiffs also seek punitive damages on these tort claims, alleging that the "acts, conduct and behavior" of the deputies was "so grossly negligent, performed knowingly, intentionally, and with such a gross disregard of the rights of Plaintiffs as to constitute fraud and oppression, by reason of which the Plaintiffs is [sic]

---

[10]The Fourth Cause of Action is also asserted against Defendant Brand, who has not filed a summary judgment motion.

entitled to punitive damages." *Id.* ¶ 28.

In their summary judgment motion, Swearingen and Rodriguez  first argue that they are immune from liability under the GTCA to the extent that they committed any tort while acting within the scope of their employment.  In the alternative, they contend that their conduct was not tortious.  Thus,  the deputies argue that they are entitled to judgment as a matter of law.

The Court agrees that, to the extent the claims are based on torts committed while the deputies acted within the scope of their employment, the deputies are entitled to judgment. Pursuant to the GTCA , an employee of the state or a political division is not properly named as a defendant if the conduct for which relief is sought was committed while the employee acted within the scope of his employment.  51 Okla. Stat. § 163(C); *see also Carswell v. Oklahoma State University*, 995 P. 2d 1118, 1123 (Okla. 1999).  Accordingly, Swearingen and Rodriguez cannot be liable for tortious conduct occurring while they acted within the scope of their employment.

The GTCA defines  "scope of employment" as  "performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud." Okla. Stat. tit. 51 § 152(9).  Whether conduct is within the scope of employment is normally a jury question; however, it is properly decided by a court where "only one reasonable conclusion can be drawn from the facts."  *Nail v. City of Henryetta*, 911 P. 2d 914, 918 (Okla. 1996).

In this case, the undisputed facts establish that Swearingen and Rodriguez were carrying out their duties as deputies of the Pottawatomie County Sheriff at all times during the conduct at issue. It is undisputed that they arrived at Plaintiffs' residence only after Brand contacted them and

requested the assistance of the County Sheriff.  It is further undisputed that, as soon as Plaintiffs were turned over to Brand, Swearingen and Rodriguez left the premises and had no further contact with Plaintiffs.

To find that they are individually liable for their alleged tortious conduct, the Court must find that the deputies  acted outside the scope of their employment because they did not act in good faith. As discussed in connection with Plaintiffs' Fourth Amendment claims, the undisputed facts establish that there is no evidence to support a contention that  Swearingen and Rodriguez acted in bad faith or unreasonably.   Conduct outside the scope of employment  requires a finding that "'the acts are so extreme as to constitute a clearly unlawful usurpation of authority the deputy does not rightfully possess.'" *DeCorte v. Robinson* 969 P. 2d 358, 361-62 (Okla. 1998), *quoting McGee v. Volusia County,* 679 So.2d 729, 733 (Fla. 1996).

The record in this case does not support a finding that Swearingen and Rodriguez engaged in conduct that could rise to the level required by *DeCorte*.  For the following reasons, the material undisputed facts establish not only that they acted in good faith and within the scope of their employment, but also that  they did not engage in tortious conduct.

a. Trespass and unlawful entry:

In Oklahoma, a trespass is "an actual physical invasion of the real estate of another without the permission of the person lawfully entitled to possession."  *Williamson v. Fowler Toyota, Inc.*, 956 P.2d 858, 862 (Okla.1998).   Thus, " a trespasser is one who enters upon property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in performance of any duty to owner or person in charge or on any business of such person, but merely for his own purposes, pleasure, or convenience, or out of curiosity."  *Id.*

22

In this case, the undisputed facts establish that the deputies did not enter the Plaintiffs' residence until Berglund told them to come inside and Mr. Berglund opened the door and accompanied them into the residence.   As discussed above, the circumstances faced by the deputies establish that it was reasonable for them to believe they had implied, if not actual, consent to enter the residence.  The only reasonable conclusion from the facts in the record is that the deputies acted in good faith and within the scope of their employment when they entered the residence.

Furthermore, the undisputed facts establish as a matter of law that Plaintiffs cannot prove the deputies' conduct amounted to a trespass.   The deputies acted while carrying out their duties, and in the reasonable belief that they had consent to enter the residence.  Under the undisputed facts of this case, the deputies' conduct cannot, by definition, constitute a trespass.   Therefore, even if Plaintiffs had a viable theory of liability on this claim, the undisputed material facts establish that Swearingen and Rodriguez did not commit a trespass; therefore, they are entitled to judgment on this claim.

b. Unlawful/false arrest:

Plaintiffs also allege that the deputies unlawfully arrested them.  As noted in the discussion of their Fourth Amendment claims, the undisputed facts establish that the deputies did not formally arrest the Plaintiffs.  Instead, they assisted Brand by escorting the Plaintiffs to his patrol car, and Brand arrested Plaintiffs.   However, Plaintiffs contend that, in addition to constituting a violation of their Fourth Amendment rights, the deputies' conduct in escorting them to Brand's car was an unlawful or false arrest supporting a tort claim.

Unlawful or false arrest is defined in Oklahoma as "the unlawful restraint of an individual against his will." *Delong v. State ex rel. Oklahoma Dept. of Public Safety*, 956 P. 2d 937, 938 (Okla.

23

Civ. App. 1998).   In the civil context, a warrantless arrest by an officer without probable cause constitutes a false arrest and forms the basis for a tort.   *Overall v. State ex rel. Dept. of Public Safety*, 910 P. 2d 1087, 1091 (Okla. Civ. App. 1995).   In an action for false arrest, a plaintiff "has the burden of proving lack of probable cause for bringing a criminal action against him." *Delong*, 956 P. 2d at 938 *(citations omitted).*   Although a false arrest claim may be based on an unlawful seizure, summary judgment is proper where the undisputed material facts show that no unlawful seizure occurred.   *Snider v. Lincoln County Bd. Of County Com'rs*, 2006 WL 2794816, at * 4 (W.D. Okla. Sept. 27, 2006).

The undisputed facts before the Court establish that the deputies acted within the scope of their employment as law enforcement officers when they took Plaintiffs from the residence and accompanied them to Brand's vehicle.   As discussed in connection with the Court's ruling on Plaintiffs' Fourth Amendment claims, Swearingen and Rodriguez did not engage in threatening conduct but, in fact, seemed "very nice."   Berglund dep., Board Exhibit 1, p. 205, lines 15-16. Plaintiffs were not handcuffed, and the deputies did not brandish weapons. *Id.,* p. 195, lines 13-15; p. 204, lines 22-25; p. 205, lines 1-4 and 8-14.   The only reasonable conclusion to be drawn from the facts in the record is that the deputies acted within the scope of their employment in their conduct toward Plaintiffs.

The established facts in the record also compel the conclusion that, as a matter of law, Plaintiffs cannot prevail on their claim of unlawful or false arrest.   The Court has determined the undisputed facts in this case establish that Plaintiffs were not subjected to an unlawful seizure or an arrest by Swearingen and Rodriguez in violation of the Fourth Amendment.   For the same reasons, Plaintiffs cannot meet their burden of proof that the deputies are liable for the tort of unlawful or

false arrest.  Defendants Swearingen and Rodriguez are entitled to judgment as a matter of law on this claim.

c.  Assault and battery:

Plaintiffs also contend that Swearingen and Rodriguez are liable for the torts of assault and battery.  Oklahoma has adopted the Restatement (Second) of Torts definitions of assault and battery. *See, e.g., Brown v. Ford,* 905 P. 2d 223, 229 n. 34 (Okla. 1995).  According to the Restatement,  an individual is liable to another for assault if "(a)  he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension."  Restatement (Second) Torts § 21. An individual is subjected to potential liability for a battery if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results."  Restatement (Second) Torts § 13.

The testimony of Plaintiff Vasquez establishes that she cannot prevail on a claim of assault or battery against either Swearingen or Rodriguez.  She denies that either defendant threatened her or physically harmed her; in fact, she affirmatively states that they did not touch her.  Vasquez dep., Board Ex. 7, p. 80, lines 16-22; p. 81, lines 1-23.  Vasquez offers no testimony to support a claim that Swearingen or Rodriguez caused her apprehension of harm, and  there is no evidence in the record to support the contention that either Swearingen or Rodriguez took action to contact her or to place her in apprehension of contact.  Thus, Swearingen and Rodriguez are entitled to judgment as a matter of law on an assault or battery claim purportedly asserted by Vasquez.

Similarly, with respect to Rodriguez, Plaintiff Berglund offers no testimony or other

evidence that could arguably support a claim that he assaulted or battered her.  She argues only that, while escorting her to Brand's car,  Swearingen injured her by twisting her arm behind her back. No other allegation of assault or battery is presented.

Plaintiffs offer no evidence suggesting that Swearingen acted with the intent to harm Berglund; they do not contend that he threatened  her with physical harm.  In fact, as noted, both Plaintiffs testified that no threats were made by the deputies, and Berglund testified both Swearingen and Rodriguez "seemed very nice to me."  Berglund dep., Board Ex. 1, p. 205, lines 15-16  The absence of any threatening conduct or other use of force negates a finding that Swearingen intentionally sought to harm Berglund or even to place her in apprehension of being harmed.   His conduct is thus more properly evaluated under Plaintiffs' claim of excessive force, which the Court has concluded is not a viable claim here.  The " reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight when there is a claim of excessive force. " *Graham*, 490 U.S. at 396. Accordingly,  "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers ... violates the Fourth Amendment." *Id.; see also Saucier v. Katz*, 533 U.S. 194, 198 (2001).

The undisputed facts establish that, after her arrest by Brand, Berglund claimed that she was in pain.  It is not clear whether she contends that the pain was caused by Swearingen or by Brand because she also alleges that, before the deputies arrived, Brand had injured her neck when she struggled with him.  After her arrest,  Brand took her to the hospital for examination.  Berglund alleges that she had bruises on her neck and wrist, but  no other  injury was found; the only medical treatment she received was for high blood pressure.

In this case, there is no evidence to support a contention that Swearingen used excessive

force or that he took any action motivated by an intent to harm Berglund.  The Court concludes that the only reasonable construction of the evidence is that Swearingen acted in good faith, and was thus within the scope of his employment.  Furthermore, the Court concludes that no reasonable juror could find that Swearingen's  conduct constituted a battery under Oklahoma law.   Berglund does not argue that Swearingen injured her neck; thus, the presence of bruises on her neck could not support a claim that he injured her.   Construing the evidence most liberally in her favor, there were bruises on her wrist.  Assuming that such bruises were caused by Swearingen and were not incurred during the previous struggle with Brand, the Court nevertheless finds that the existence of bruises is not sufficient evidence from which a reasonable jury could find that Swearingen committed the tort of battery.  During the course of a seizure, it is not unusual that a suspect could incur bruises or, in some cases, more serious injury; the existence of bruises, without more, does not support the use of excessive force.  *Culver v. Town of Torrington*, 930 F.2d 1456, 1461 (10th Cir. 1991).

The undisputed facts in evidence establish not only that Swearingen acted in good faith, but also that his conduct did not constitute an assault or battery as a matter of law.  Therefore, the Court concludes that he is entitled to judgment on this tort claim. Because  Berglund and Vasquez do not contend that Rodriguez threatened or touched them,  he is also entitled to judgment on this claim.

Accordingly, the Motion of Swearingen and Rodriguez [Doc. No. 37] is GRANTED to the extent judgment is sought on the tort claims asserted against them.  Because the Court has also granted their motion with respect to the § 1983 claims asserted against them, Swearingen and Rodriguez are entitled to judgment on all claims asserted against them in this case.

Plaintiffs' claims against Sheriff Shirey:

Pottawatomie County Sheriff Shirey is named as a defendant in the first and second causes

of action asserted by Plaintiffs. The first cause of action asserts the claim for assault and battery allegedly committed by Swearingen and Rodriguez, and the second cause of action asserts the trespass and unlawful entry claim against those defendants.  Plaintiffs argue that, because Swearingen and Rodriguez were his deputies, Sheriff Shirey is liable for their tortious conduct under the GTCA or pursuant to Okla. Stat. tit. 19 § 547.  In his Motion, Shirey argues that he is entitled to judgment as a matter of law because the undisputed material facts establish that he cannot be liable on either theory of recovery.

Because the Court has concluded that the undisputed material facts in the record establish that Swearingen and Rodriguez did not commit a trespass or unlawfully enter Plaintiffs' residence, there is no tortious conduct upon which Sheriff Shirey could be held liable under any theory asserted by Plaintiffs.  Similarly, the Court has concluded that the undisputed material facts in the record establish that Swearingen and Rodriguez did not assault or batter Plaintiffs; thus, Shirey cannot be liable because there was no tortious conduct[11].

Even if the Court had concluded that a factual dispute exists with respect to Plaintiffs' tort claims, however, the governing law establishes that Sheriff Shirey could not be liable on these claims.

Sheriff Shirey first argues that  he cannot be liable for the deputies' acts under the GTCA because liability is limited to the State and its political subdivisions, and  a county sheriff is not a political subdivision under the GTCA.   The GTCA defines a political subdivision as a municipality, a school district, a county, and a public trust where the sole beneficiary is a city, town, school

---

[11]The Petition does not allege that Sheriff Shirey is liable for the alleged  false or unlawful arrest.  Even if Plaintiffs asserted that claim against him, Sheriff Shirey could not be liable as a matter of law because the Court has concluded that Swearingen and Rodriguez did not falsely or unlawfully arrest Plaintiffs.

district, or county; the "institutions, instrumentalities or agencies" of the foregoing entities are also included in the definition.    Okla. Stat. tit. 51 § 152(8).

Suits against county officials or their appointees are construed under the GTCA as suits against the county.  51 Okla. Stat. tit. 51 § 163(C).  To properly sue a county, a plaintiff must name the county's  board of county commissioners as a defendant.  Okla. Stat. tit. 19 § 4.   Where a plaintiff does so, as in this case, it is redundant to also name a county  official sued in his official capacity.  *See Pellegrino v. State ex rel. Cameron University*, 63 P. 3d 535, 537 (Okla. 2003).   "A suit against a governmental officer in his or her 'official capacity' is the same as a suit against the entity that the officer represents, and is an attempt to impose liability upon that entity."  *Id.,  citing McMillian v. Monroe County*, 520 U.S. 781, 785, n.2 (1997).

In this case, Plaintiffs have sued the Board under the GTCA, seeking to hold it liable for the alleged tortious conduct of Swearingen and Rodriguez.  To the extent that they also sue Sheriff Shirey in his official capacity for that same conduct, their claim is effectively a claim against the county.  Both the Board and Shirey in his official capacity cannot be liable for the same conduct under the GTCA, and the Board is the proper party defendant on these claims.  Therefore, Sheriff Shirey is entitled to judgment on such claims.

Plaintiffs also seek to hold Shirey liable under a different theory of recovery, contending that Okla. Stat. tit. 19 § 547 renders a county sheriff liable for torts committed by his deputies within the scope of their employment.  The statute at issue sets forth the authority of county sheriffs to appoint and deputize employees, including reserve force deputy sheriffs, and discusses the scope of their duties.  The statute also provides, however, that "The sheriff shall be responsible for the official acts of the undersheriff and deputy sheriffs, and may revoke such appointments at the pleasure of the

sheriff.  The sheriff or the undersheriff may in writing depute certain persons to do particular acts."

Okla. Stat. tit. 19 § 547(A).

Because the statute states that the sheriff is "responsible for the official acts" of deputy sheriffs, Plaintiffs contend that Shirey must be liable for the alleged torts of Swearingen and Rodriguez occurring in the scope of their employment.   Shirey argues that the statute does not impose such liability and contends that the GTCA governs the issue.

Shirey argues that § 547(A) is directed primarily at a sheriff's authority to appoint deputies and reserve force deputy sheriffs and is not intended to authorize a tort action against a sheriff based on a *respondeat superior* theory of liability.  Even it the statute could be interpreted in that manner, however, Shirey argues that it is superseded by the GTCA because the GTCA is the exclusive remedy for a plaintiff seeking tort recovery against a governmental entity.  *See Fuller v. Odom*, 741 P. 2d 449,451 (Okla. 1987).

Plaintiffs argue that § 547 is not superseded by the GTCA and that it represents an exception to the GTCA exclusive remedy provision.   Plaintiffs acknowledge that  § 547 was enacted prior to the GTCA and that other pre-existing statutes imposing liability on certain officers have been held superseded by the GTCA.   However, Plaintiffs note that § 547 was amended after the enactment of the GTCA and those amendments did not alter § 547(A).   In contrast, Plaintiffs point to other statutes addressing the liability of a sheriff and note that those statutes were amended to comply with the GTCA.   Therefore, Plaintiffs argue that § 547(A) remains a viable basis for holding Sheriff Shirey liable.

Sheriff Shirey responds by noting that the post-GTCA amendments dealt with other existing portions  of § 547.  He contends that the failure to omit § 547(A) cannot be interpreted as an

30

intentional legislative action to exclude a county sheriff from the otherwise exclusive remedies of the GTCA.

The  Court notes that the parties have not cited authority interpreting § 547(A); the Court has located no decisions addressing the question of a county sheriff's liability for the torts of his deputies outside the scope of the GTCA.  Absent authority supporting Plaintiffs' theory, the Court finds the better reasoned conclusion is that the GTCA supersedes any other statute imposing liability for tortious conduct within the scope of employment.  Under the GTCA, a claim based on  the acts of Swearingen and Rodriguez within the scope of their employment must be asserted against the Board.

In any event, the Court has concluded that the undisputed material facts establish that Swearingen and Rodriguez did not engage in tortious conduct.  Therefore, there is no conduct for which Sheriff Shirey could be liable under either theory on which Plaintiffs rely.  Sheriff Shirey's Motion for Summary Judgment [Doc. No. 38] is GRANTED.

 Plaintiffs' claims against  the Board:

Plaintiffs seek to hold the Board liable for the alleged torts of the deputies, asserting a claim under the GTCA,  Okla. Stat. tit. 51 § 151, *et seq.,* which provides the exclusive means by which an injured plaintiff may recover tort damages from a governmental entity.  *Fuller v. Odom*, 741 P. 2d 449, 451 (Okla. 1987).  As discussed in connection with Plaintiffs' state law claims against Swearingen and Rodriguez,  the GTCA may impose liability on a county for  torts committed by its employees while acting within the scope of their employment.  *Salazar v. City of Oklahoma City*, 976 P. 2d 1056, 1066 (Okla. 1999); *DeCorte*, 969 P. 2d at 361 (Okla. 1998), *citing* Okla. Stat. tit. 51 § 153 (1991).  To be within the scope of employment, the conduct must have been in good faith.  Okla. Stat. tit. 51 § 152(9).

In this case, the Board argues that it cannot be liable as a matter of law for the conduct of Swearingen and Rodriguez because they did not engage in tortious conduct.  Alternatively, the Board argues that, if the deputies engaged in the conduct alleged by Plaintiffs, the Board cannot be liable because such conduct could not have been in good faith and was, by definition, outside the scope of the deputies' employment.

Where a law enforcement officer abuses his lawful power, the employing agency is immune from liability for the resulting torts because such abuse negates a finding that he acted in good faith.  *See, e.g., DeCorte*, 969 P. 2d at 361-62.  Allegations that an officer assaulted and battered a plaintiff are among the type of actions that would fall "outside the scope of the officers' employment, precluding *respondeat superior* liability on the part of the city under §§ 152(9) and 153(A)."  *Scheerer v. City of Oklahoma City,*  1997 WL 4276, at *2 (10th Cir. Jan. 7, 1997), *citing McMullen v. City of Del City*, 920 P.2d 528, 529-31 (Okla. Civ. App.1996);  *Holman ex rel. Holman v. Wheeler*, 677 P.2d 645, 646-48 (Okla.1983); *Houston v. Reich*, 932 F.2d 883, 885, 889-90 (10th Cir.1991).

Accordingly, the Court agrees with the Board that, if Swearingen and Rodriguez committed the tortious acts alleged by Plaintiffs in this case, the Board would not be liable as a matter of law because the factual allegations asserted by Plaintiffs, if proven,  negate a finding of good faith. Because the Court has concluded that the undisputed material facts establish that there was no tortious conduct, the Board is also entitled to judgment even if the deputies were acting within the scope of their  employment.  Therefore,  the Board is entitled to judgment on the tort claims.   The Board's Motion [Doc. No. 36] is GRANTED.

Conclusion:

For the reasons set forth herein, the Motion for Summary Judgment of Defendants Swearingen and Rodriguez [Doc. No. 37] is GRANTED as to all claims asserted against them.  The Motions for Summary Judgment of the Board [Doc. No. 36] and Sheriff Shirey [Doc. No. 38] are also GRANTED as to all claims asserted against them.   This Order does not dispose of all claims asserted against the other defendants in this action, however,  and the case will proceed on Plaintiffs' federal and state law claims asserted against Asher Police Chief James Brand and the City of Asher.

IT IS SO ORDERED this ___8th___ day of July, 2008.


_____

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE